DUFRESNE, Judge.
This is an appeal by Jack Daener, Jr., plaintiff-appellant, from a jury verdict awarding him $9,700 in damages suffered in a rear-end collision, reduced by 50% for his comparative negligence in causing the accident. He asserts here that the jury erred in not awarding higher damages, and in finding him partially at fault. David Berwick and his insurer, Allstate Insurance Company, def endants-appellees, have neither answered this appeal nor cross-appealed. Because we find no abuse of discretion by the jury in fixing the award, and no manifest error in its determination of fault, we affirm.
As to the issue of fault, the simple fact is that plaintiff and defendant gave different versions of the accident, and the jury apparently believed the defendant. In Rosell v. ESCO, 549 So.2d 840 (La.1989), the court stated that:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, (at 844-45) (citations omitted).
In the present case, there was no dispute that plaintiff and defendant were both traveling west in the left lane of Interstate 10, at the moment defendant’s pick-up truck struck the rear of plaintiff’s car. It was also clear from the testimony of both that another accident of some sort had occurred a few minutes before on the right side of the highway and that there were police units and probably a fire truck at that scene.
Defendant’s version of the present accident was that he was going about 55 MPH in the left lane, and that plaintiff was in the center lane. He stated that when traffic in the center lane slowed down because of the prior accident, plaintiff abruptly swerved into the left lane and put on his brakes. Defendant’s further testimony was that this lane change and braking was so sudden that he did not have time to get his foot off the accelerator and onto the brake before running into plaintiff.
Plaintiff's version was that he had been in the left lane for perhaps a half-mile before the collision. He said that he had not applied his brakes, but had simply taken his foot off the accelerator and slowed to perhaps 50 MPH when his car was struck from behind. Karen Benoit, the passenger in plaintiff’s ear and his longtime friend, testified by way of deposition that she did not notice the car slow down, and that “we just got hit from the rear”. She was not asked, and did not mention, whether plaintiff had changed lanes. Anthony Ledet, the police officer who investigated the accident, stated that he had no direct recollection of the incident, which occurred some two and one-half years prior to trial, but was testifying from his report. His testimony was that plaintiff told him that he took his foot off the accelerator and was slowing down, when he was struck from the rear. Defendant told him that when plaintiff slowed down, he was unable *1355 to stop and ran into him. The officer also stated that nothing in his report made reference to any lane changes, and that the estimated speeds of the plaintiffs and defendant’s vehicles were about 50 MPH and 55 MPH, respectively. He finally stated that in his opinion defendant was inattentive.
Plaintiff correctly states the rule that a following motorist in a rear-end collision is generally presumed to be negligent, and will only be exonorated when he can reasonably explain the cause of his running into the vehicle ahead, Baach v. Clark, 442 So.2d 514 (La.App. 5th Cir.1983). It is also the rule that a motorist should not change lanes without being sure that he can do so safely, id. In the case before us, it is apparent that the jury credited defendant’s testimony that plaintiff changed lanes, almost immediately applied his brakes, and that defendant was unable to stop before hitting him. It appears that the jury was also persuaded that the defendant was inattentive. It thus found that both parties were equally at fault in causing the accident.
Plaintiff urges that any finding by the jury that he changed lanes was manifest error, and because there was no other basis upon which to predicate his comparative negligence, the finding that he was partially at fault must be reversed. We disagree. In Rosell v. ESCO, supra, the court stated that absent objective evidence, or internal inconsistencies or implausibilities in a witness’s testimony, a factfinder’s decision to credit that testimony “can virtually never be manifestly erroneous”.
In the present case, the only arguably objective evidence introduced on this point was Officer Ledet’s report of the incident, in which no mention is made of a lane change, and the brief deposition testimony of Ms. Benoit. As noted above, all the police report says is that plaintiff slowed down and defendant was unable to stop or slow down enough to avoid the accident. Similarly, Ms. Benoit said nothing one way or the other about a lane change, but she was also unaware that the car had even slowed down before impact, a fact otherwise undisputed in the remainder of the record. As to defendant’s testimony, there is nothing implausible or inconsistent in his version of the accident. Nor can we say that this version is so contradicted by the scant objective evidence as to render it unbelievable to a reasonable trier of fact. In these circumstances, we must give great deference to the jury’s credibility determinations and affirm its findings of fact.
Plaintiff also urges that certain testimony, which he contends enlarged the pleadings, was improperly admitted. Under La.Code Civ.Pro., art. 1154, when evidence is presented which is not pertinent to any issues properly before the court, such evidence serves to enlarge the pleadings, unless it is objected to at trial. In DLJ of Louisiana #1 v. Green Thumb Inc., 376 So.2d 121 (La.1979), a suit to nullify a judgment, the court noted that when a party “fails to object to the introduction of evidence” (emphasis added) not pertinent to any issues raised in the pleadings, that evidence enlarges the pleadings to include those new issues (p. 122, n. 9).
In the present case, the testimony at issue was elicited from defendant, by his own counsel, and plaintiff’s counsel then cross-examined him on these matters, all without objection. The following day, after both parties rested, plaintiff’s counsel objected to the evidence for the first time during a pre-argument bench conference. The trial judge ruled that the objection came too late, as the evidence had already been introduced without objection. It is our opinion that this ruling of the trial judge was correct, and we so hold.
Plaintiff’s remaining allegations all concern the quantum of damages awarded by the jury. He contends that the award of $2,000 for past and future medicals and $7,500 for general damages are too low, and that the jury further erred in not awarding him any lost wages. The remaining $200 of the judgment was for plaintiff’s deductible on his auto insurance policy, which is not covered.
It was shown at trial that plaintiff declined emergency treatment at the scene of the accident of October 17, 1986, and drove home when the police investigation was completed. Three days later, on October 20, he saw his family physician, who pre *1356 scribed pain medication and sent him home. On October 22, plaintiff saw Dr. Raul Reyes. After reviewing x-rays and examining him, this doctor diagnosed the injuries as two bruises on his left leg and a lumbosacral strain. He prescribed physical therapy and anti-inflammation drugs, and advised plaintiff to return the following week. Plaintiff did not return to this or any other medical doctor, nor did he seek treatment from a physical therapist. Medical bills for both doctors totaled $378.00.
Plaintiff further alleged at trial that as a result of the accident he suffered post-traumatic stress syndrome which manifested itself in anxiety while driving and sexual dysfunction. Dr. Chester Scrignar, a psychiatrist, testified as plaintiffs expert. This doctor’s testimony was that he had not treated plaintiff for this alleged condition, but had only seen him for consultation purposes on referral by his attorney. Dr. Scrignar stated that his usual procedure for evaluating people on a consultation basis was to see them on three visits of 45 minutes each, and then render an opinion. He saw plaintiff on November 3, 1986, and again on November 20. Plaintiff then missed the third scheduled appointment of January 12, and again failed to show up on February 5, 1987. At the third rescheduled appointment of November 25, 1987, plaintiff arrived 35 minutes late, and thus saw the doctor for only 10 minutes. It further appears that there were two other visits on December 10, 1987, and April 28, 1988, respectively. Although the usual consultation fee was $750, because of the missed appointments, plaintiff was charged $1,050. The opinion of this doctor at the time of trial was that plaintiff was suffering from post-traumatic stress syndrome which rendered him anxious when driving and unable to engage in sexual relations. He noted that although plaintiff had not informed him that he had lost his job a week after the accident, until a year and a half after the first visit, he did not believe that this potentially stressful and unsettling occurrence would have caused all of plaintiffs symptoms. He gave the further opinion that plaintiffs sexual problems could be caused by physical disorders, but stated that he had not tested or examined him for such disorders. He also noted that plaintiff admitted that he had suffered sexual disfunction occasionally before the accident but claimed it was worse after the accident. The doctor’s prognosis was that plaintiff’s psychiatric problems could probably be resolved by a year of weekly sessions costing between $90 and $165 per session.
Plaintiff’s testimony was that the day after the accident he was stiff in his leg and back. Two days later, he saw his family doctor, and on advice of counsel saw Dr. Reyes several days after that. He admitted that he saw no other doctors for these problems, but rather treated himself conservatively at home. Although he stated that his back still bothered him if he did heavy lifting, his major complaint was with the bruises on his legs, which he claims bothered him while standing for some eight months after the accident. He further alleged that he suffered anxiety while driving, especially on interstate highways, and was unable to have sexual relations since the accident.
Plaintiff also stated that for several months after the accident he didn’t work, but rather spent this time recuperating from his injuries. He therefore claimed lost wages as an element of damages. It appears from the evidence, however, that he was fired from his prior job for reasons unrelated to the accident, and aside from his uncorroborated testimony, there is little evidence to show that he was actually disabled for any determinable period of time.
That testimony was as follows. At the time of the accident, he was employed as the manager of a barge company in which he had a ten percent ownership interest. He stated that about 90% of his work was done on the telephone, that the remaining 10% involved administrative and oversight duties. He had taken over management of the company some two years before, and had brought it out of receivership to a gross annual income of some three million dollars. It was his expectation that this was to be a lifetime job. Unfortunately, one week after the accident, he was forced out by his two other partners for business reasons. His salary was $60,000 per year, and he was given one month’s salary as severance pay. During the next year, he *1357 formed his own barge company, and began drawing a salary from it in September of 1987. However, no other details about the formation of this company were given. Further, the only references made by plaintiff as to the effect of his injuries on the development of the new company were that he could not operate his own tugboats and thus had to hire other pilots, and that he was unable to go out on the boats and barges when problems developed. There was absolutely no evidence presented, or even an estimate by plaintiff, to show what financial loss he suffered because of his alleged inability to perform these tasks. Finally, he testified that the reason he had not yet sought psychiatric treatment for his alleged sexual disfunction was that because of the press of starting his new company, he was simply unable to take off the time necessary for such treatments, and further, that creating the company “took precedence over my social life, my sexual life.”
On the basis of this evidence, the jury awarded plaintiff $2,000 for past and future medical expenses. Because it is clear in the record that Dr. Scrignar’s fee of $1050 was solely for consultation, in regard to litigation, and not for treatment, this item is not recoverable as an element of damages, Adams v. Security Insurance Co. of Hartford, 533 So.2d 140 (La.App. 1st Cir.1988). The jury award must therefore include $378.00 for past medicals and $1,622.00 for future psychiatric treatment. Although this doctor testified that plaintiff would need a year of psychiatric treatment costing some $5,000, it was also shown at trial that his sexual disfunction pre-dated the accident, and was only at best aggravated by the collision. The jury thus awarded him only about one-third of his future medical expenses, apparently finding that this was a reasonable assessment of the aggravation of the condition caused by the collision. Again, we cannot say that this factual finding was manifestly erroneous, and therefore must affirm that finding.
As to the award of $7,500 in general damages, the rule applicable to review of such damages is that unless the appellate court, after review of the entire record, can give articulable reasons for concluding that the trier of fact abused its much discretion in fixing the award, that award should not be disturbed, Reck v. Stevens, 373 So.2d 498 (La.1979). In the present case, we are unable to say that on the particular facts before us the jury abused its discretion in fixing the award, and we therefore decline to disturb it.
The final issue is whether the jury erred in declining to award plaintiff any lost wages. There is no serious dispute that plaintiffs loss of his job was completely unrelated to his injuries. Neither can we say that the jury was wrong in apparently finding that plaintiff’s injuries would not have disabled him from performing this job, which consisted of 90% of the time on the telephone and the remainder in administrative duties. Further, although he claimed that he was unable to pilot his tugboats, or perform operations on barges, there was absolutely no evidence to show the amount of these alleged losses. On this showing there was thus no way that the jury could have ascertained this amount, even had they credited plaintiff’s uncorroborated testimony as to this disability. We therefore conclude that the jury did not err in declining to award lost wages as an element of damages.
For the foregoing reasons, we therefore affirm the judgment of the jury.
AFFIRMED.